UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| LIBERTY LIFE ASSURANCE COMPANY OF BOSTON, *ET AL.* | ) ) ) | |
| v. | ) ) | NO. 2:02-CV-341 |
| LOYD F. GILBERT, JR., *ET AL.* | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

This interpleader and declaratory relief action filed by Liberty Life Assurance of Boston ("Liberty Life") and Sun Life Assurance Company of Canada is before the Court on the motions for summary judgment filed by the defendant/counter-plaintiff Singer Asset Finance Company, LLC, ("Singer") the defendant/counter-plaintiff/cross-claimant, Stephanie Muschlitz ("Muschlitz"), and the defendant/counter plaintiff, Irene K. Wolff (Wolff).[1]  [Docs. 31, 32, and 33]. The material facts are undisputed, all parties have fully briefed the legal issues and the matter is ripe for disposition by the Court.

**I.    Factual Background**

The decedent, Loyd Gilbert ("Gilbert"), was injured in an accident on

---

[1] This appears to be the correct spelling although the spelling used in the original complaint and amended complaint is "Wolfe".

November 24, 1992, and subsequently filed a lawsuit in the Circuit Court for the City of Virginia Beach, Virginia, in an effort to recover damages for his personal injuries suffered as a result of the accident. The defendants in the Virginia action were insured by Liberty Mutual Insurance Company ("Liberty Mutual") and, in 1995, he entered into a negotiated settlement of his claims. The Settlement Agreement and Release("the Agreement") entered into between Gilbert and Liberty Mutual provided for an immediate cash payment to Gilbert of $107,000 plus periodic payments of $666 per month for thirty six years commencing November 25, 1995.

     The Agreement provided that Liberty Mutual could make a Qualified Assignment of its liability to make the agreed upon periodic payments, within the meaning of Section 130(c) of the Internal Revenue Code. Liberty Mutual then made such an assignment to Keyport Life Insurance Company ("Keyport"). The Agreement further provided that Liberty Mutual or its assignee could satisfy its obligations under the settlement agreement through the purchase of an annuity. Keyport did, in fact, purchase an annuity from Liberty Life. Keyport is the owner of the annuity and the annuity payments were directed to Gilbert to meet Liberty Mutual's liability to Gilbert for the agreed upon periodic payments. The Agreement further provided that Gilbert does not have the power to "sell,

mortgage, encumber, or anticipate the Periodic Payments, or any part thereof, by assignment or otherwise." The original annuity contract provided that upon the annuitant's (i.e. Gilbert's) death, payments would be made to the annuitant's estate, but the annuitant was permitted by the terms of the annuity contract to change the beneficiary by written request during the annuitant's lifetime.

At the time of Gilbert's injuries in 1992, he was married to Wolff. During the course of Gilbert's personal injury lawsuit, Gilbert and Wolff determined to be divorced and entered into a handwritten agreement dated June 29, 1995, which purports to obligate Gilbert to pay certain amounts to Wolff "if and when I receive any compensation for the accident dated 11/24/92." Wolff and Gilbert were apparently divorced on June 10, 1999, and the Court's decree incorporated and ratified the June 29, 1995 agreement between Gilbert and Wolff.[2]

On March 22, 1999, Gilbert entered into a "Loan Application and Loan Agreement," with Merrick Bank pursuant to which Gilbert received $51,105.00. In the loan agreement, the defendant/counter plaintiff, Singer, is listed as the "processing agent." Singer is also Merrick Bank's assignee of the loan agreement. In the agreement, Gilbert agrees to repay the "loan," in 240 monthly payments of

---

[2] Wolff has submitted a Decree of Divorce, certified by the Clerk of the Court, apparently signed by counsel for both parties but which does not bear a signature for any judge. No party contests that Wolff and Gilbert were divorced and the Court will assume, for the purposes of this motion, that they were legally divorced.

3

$666.00 each, commencing on May 25, 1999 and concluding on April 25, 2019.

As required by the loan agreement, Gilbert pledged and granted a security interest to Merrick Bank in the periodic payments to which he was entitled under the settlement agreement and annuity contract. UCC-1 financing statements were filed in North Carolina and Tennessee in an effort by Singer to perfect its security interest in the collateral(i.e. the periodic payments). Gilbert also executed an irrevocable durable power of attorney appointing Singer as his attorney in fact granting Singer sole and absolute rights to deal with the periodic payments, including the right to change the beneficiary designation. Gilbert, also pursuant to the loan agreement, opened a bank account with Wachovia Bank, directed his annuity payments to said account, and gave Singer power of attorney to access deposits made to said bank. Gilbert further notified Liberty of a change of address to a post office box which, though being in the name of Gilbert, was controlled by Singer. When Gilbert entered into the loan transaction, Singer sent to the attorney for Gilbert's ex-wife, Irene Wolff, a check in the amount of $3,015.84. The cover letter sent with the check indicates that it "represents payment of garnishment per agreement dated 6/29/95 on the above referenced account." The account referenced is the case number for the divorce of Gilbert and Wolff.

Other than the handwritten agreement between Gilbert and Wolff dated 6/29/95, Gilbert never executed any documents to assign the receipt of any proceeds to Wolff. When Wolff did not receive any further payment from Gilbert, she filed a motion to show cause against him in the Circuit Court of the City of Virginia Beach on December 8, 2000. Gilbert failed to appear for the show cause hearing, and on August 10, 2001, an Amended Judgment Order was entered in the divorce case[3], granting Wolff judgment against Gilbert in the amount of $34,947.61, plus $1,260.00 in attorneys fees and costs of $83.48. A garnishment summons was issued on December 18, 2001 and served on Liberty Life, and Liberty Life, in its February 20, 2002, answer to the garnishment summons, notified the Circuit Court of its intention to "withhold from Mr. Gilbert any monthly periodic payments which become due under the Policy following receipt of the Garnishment Summons until further notice from the court."

On December 29, 2000, despite his agreement with Merrick (and Singer), Gilbert requested that Liberty Life change the beneficiary on his annuity to his daughter, Stephanie Muschlitz. By letter dated November 12, 2001, Liberty Life acknowledged the change of beneficiary designation to the annuity. Gilbert died

---

[3] Once again, the Court notes that the amended judgment, certified by the Clerk as a true copy, bears the signature of neither Wolff's attorney nor any judge. For the purposes of deciding these motions for summary judgment, however, the Court will assume that the order is valid.

on September 23, 2003. No probate estate has been opened for Gilbert.

Gilbert made all required payments to Singer under the loan agreement until February , 2002, except for the payments for September and October, 2001. He made no payments after February, 2002. On May 10, 2002, Singer filed suit against Gilbert in the Chancery Court for Hancock County, Tennessee seeking judgment against Gilbert "in an amount not to exceed $150,000" and for injunctive relief prohibiting Gilbert from exercising dominion over the periodic payments. Singer's state court complaint stated causes of action based on theories of breach of the loan agreement, conversion and unjust enrichment against Gilbert. An amended complaint added Keyport as a party defendant and sought injunctive relief and declaratory relief. Liberty Life filed this action in this Court on November 18, 2002, to determine to whom annuity benefits are payable, Wolff and Singer having both notified Liberty Life of claimed entitlement to a portion of the annuity payments, and Muschlitz laying claim to the entirety of the annuity payments as Gilbert's beneficiary.

**II.    Standard of Review:**

Summary judgment is appropriate when "there is no genuine issue of material fact." *Fed.R.Civ.P.* 56(c). The moving party bears the initial burden of

6

proving that no material facts exist, and the court must draw all inferences in a light most favorable to the non-moving party. A court may grant summary judgment when the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. Once the moving party has proved that no material facts exist, the non-moving party must do more than raise a metaphysical or conjectural doubt about issues requiring resolution at trial. *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir.1992) (citations omitted).

In accordance with long standing summary judgment principles, this Court must construe the evidence in this record most favorably for the moving parties. *E.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88(1986); *Scott v. Clay County*, 205 F.3d 867, 871 (6th Cir.2000). As explained by the Sixth Circuit in *Scott*,

> "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.... <u>The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor</u>." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citation omitted). See also *Eastman Kodak v. Image Technical Services*, 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992); *Adams v. Metiva*, 31 F.3d 375, 378-79 (6th Cir.1994). (emphasis added)

Id. at 871.

### III. <u>Discussion:</u>

Initially, the Court must address the choice of the state law applicable to interpretation of the contracts before it.  The parties apparently agree that Virginia law controls the interpretation of the contract between Wolff and Gilbert and the settlement and annuity contracts, while interpretation of the loan documents with Singer is controlled, as stated in the agreements, by Utah law.  The settlement agreement and annuity contracts were executed in Virginia and the contracts contain valid choice of law provisions indicating Virginia law as applicable to the interpretation of the contracts.

### *Wolff's Claim*

Wolff lays claim to the sum of $48, 423.97 of the proceeds at issue in this case, plus interest, because, she alleges, of "Gilbert's partial assignment of proceeds of his personal injury settlement in satisfaction of her right to equitable distribution of property rights."  Her claim arises from an agreement entered into by Wolff and Gilbert on June 29, 1995, in which Gilbert agreed to pay certain sums to Wolff "if and when I receive any compensation for the accident dated 11/24/92."  That agreement was approved, ratified and incorporated into their final decree of divorce entered June 10, 1999, by the Circuit Court of the City of Virginia Beach, Virginia.  Later, after Wolff filed a motion to show cause, the divorce court entered an Amended Judgment Order granting Wolff judgment

8

against Gilbert for the amounts agreed to be paid.[4]

Wolff's claim fails for a very simple reason. The agreement between Gilbert and Wolff created an obligation on the part of Gilbert to pay the agreed upon amounts to Wolff contingent upon receipt by Gilbert of compensation by Gilbert for his 1992 accident but cannot reasonably be interpreted as even an attempted assignment of any proceeds from the settlement. This agreement was simply a conditional agreement to pay by Gilbert, a fact acknowledged by the divorce court. There is no language in the June 26, 1995 agreement that even suggests an attempted assignment. Virginia law is clear that, in order for an assignment to be effective, there must be an "intent to transfer a present owner- ship of the subject matter of the assignment to the assignee..." *Edmunds v. CVC Enterprises, Inc.*, 261 Va. 432, 436; 544 S.E. 2d 324, 326-327 (2001). No such intent even remotely appears here.

Furthermore, once Wolff's agreement with Gilbert was incorporated into the divorce judgment, it was no longer enforceable as a contract, but enforceable through the contempt powers of the court. *See Bazzle v. Bazzle*, 561 S.E. 2d 50, 54 (Va. Ct. App. 2002). Even if Wolff were to argue that the agreement was not

---

[4] Once again the Court notes that the orders filed with this Court from the divorce proceedings in Virginia by Ms. Wolff's attorney bear no signature by any judge. Nevertheless, the Court will presume for purposes of this motion for summary judgment that the orders are valid as alleged by Ms. Wolff.

9

incorporated into her divorce judgment, but was merely ratified by the court, once she sought to enforce the agreement through the contempt proceedings in the Virginia court any contractual remedy she may have had under the original agreement between her and Gilbert was reduced to a judgment, and her contractual rights cannot serve as a basis for her claim to the annuity payments. *Id.* at 55. In fact, the divorce court actually provided a liquidated amount of damages in its order as a result of Gilbert's breach of the agreement between him and Wolff. Accordingly, Wolff cannot now lay claim to the annuity proceeds by virtue of a purported assignment, but stands in the shoes of an unsecured creditor of Gilbert.

While Wolff merely stands in the shoes of a judgment creditor of Loyd Gilbert, she did take legal action to enforce her judgment by serving a garnishment on Liberty. Liberty responded to the garnishment, which it received January 28, 2002, on February 20, 2002, indicating that it would withhold periodic payments pending further order of the court. Liberty then filed this interpleader action. No challenge has been made to the validity of this garnishment. To the extent the garnishment was valid, it obviously lost its legal effect upon the death of Gilbert on September 23, 2003. However, Va. Code Ann. § 34-28.1 clearly provides that all proceeds derived from settlement of a personal injury suit are exempt from

creditor process. As this Court has found that Wolff stands in the shoes of a judgment creditor, the annuity payments which represent proceeds of a personal injury settlement are exempt from her garnishment.

### *Singer's Claim*

The claim of Singer presents a more difficult question and requires the Court to determine whether, under Virginia law, Gilbert had the power to enter into the loan agreement with Singer. After careful consideration, this Court concludes that Gilbert lacked the power, because of the plain language of his settlement agreement with Liberty, to enter into the transaction with Singer and, therefore, Singer has no perfected security interest in the annuity payments.

It cannot be said by Singer that it did not enter into its loan transaction with Gilbert with its eyes wide open as to the potential risk involved in the transaction with Gilbert. Its loan documentation reflects that it had, in its possession, copies of the settlement agreement and the annuity contract. It was also apparently aware of Wolff's claims to the entitlement of at least certain funds, as evidenced by Singer's payment to Wolff referencing the docket number of the divorce case. Singer's knowledge is important because the settlement agreement and release between Gilbert and Liberty provides on its face, in clear and unambiguous language, that neither "the Plaintiff [nor] any Payee have the power to sell,

11

mortgage, encumber, or anticipate the Periodic Payments, or any part thereof, by assignment or otherwise." It is these periodic payments in which Singer claims that its security interest is perfected as evidenced by the recitals of its loan application and loan agreement as well as its UCC-1 financing statement. Gilbert clearly negotiated away not only his right, but also his power, to sell or encumber his right to the periodic payments.

Even if the settlement agreement and/or release did not contain the language prohibiting Gilbert from assigning his rights to receive payment, it is clear under Virginia law that these types of transactions are not favored. *See In re Granati*, 307 B.R. 827 (E.D. Va. 2002); *See also Va. Code Ann.* § 59.1-475, *et seq.* (Virginia Structured Settlement Protection Act). The settlement agreement and release, which Singer had in its possession prior to entering into its loan agreement, clearly states on its face that Gilbert did not have the power to encumber or assign his right to receive periodic payments.

While these types of transactions are typically titled "loans", the transaction which Singer has orchestrated is commonly referred to as a factoring transaction, where a structured settlement is essentially purchased for the right to receive future payments. Singer is apparently well versed in these types of transactions, as brief research turns up numerous cases involving Singer, dealing with the legality of

12

these types of transactions, though none could be found in Virginia. Nevertheless, the District Court for the Eastern District of Virginia, analyzing these types of transactions in the context of Virginia law, found that they are disfavored. In fact, only days after Singer entered into the transaction with Gilbert, the Virginia legislature codified the public policy disfavoring such transactions, enacting the Structured Settlement Protection Act which requires the "direct or indirect transfer of structure settlement payments" to be approved in advance by a court or responsible administrative authority. Of course, the statute does not apply to the case at bar, but is clearly indicative of Virginia public policy. To the extent that the loan agreement can nevertheless be viewed as an assignment or mortgaging of Gilbert's rights to receive payments under the annuity contract, as opposed to the periodic payments under the settlement agreement, this Court must determine Gilbert's ability to transfer his receipt of payments under the annuity. Notably, Gilbert is not a party to the annuity contract, but is simply a beneficiary, the contract being owned by Keyport as a vehicle to fund Liberty Mutual's obligations under the settlement agreement. "It is axiomatic that one may not sell, assign or hypothecate that which he does not own." *Allstate Ins. Co. v. Am. Bankers Ins. Co. of Florida*, 882 F. 2d 856, 859 (4th Cir. 1989). Since the annuity policy clearly states that the owner is Keyport, Gilbert could not lawfully assign his right to

13

payment under the annuity. *Allstate* at 859-60.

In short, given Virginia's disfavoring of these types of transactions, the fact that the settlement agreement provided that Gilbert could not assign or encumber his right to periodic payments, and the fact that Gilbert had no ownership in the annuity policy, the Court is of the opinion that the "loan" transaction is invalid.

Of course, this does not negate the fact that Gilbert and Singer were engaged in a transaction in which Singer provided considerable consideration in exchange for payments from Gilbert, though with a hefty interest rate. Thus, the Court must also look at equitable considerations in determining Singer's status. The court in *Granati* found equitable principles sufficient to make the factoring company the equitable owner of the annuity contract. In order to establish a quasi-contract by virtue of unjust enrichment, the following elements must be met:

> (1) A benefit conferred on [Gilbert] by [Singer];
>
> (2) Knowledge on the part of [Gilbert] of the conferring of the benefit; and
>
> (3) Acceptance or retention of the benefit by [Gilbert] in circumstances that render it inequitable for [Gilbert] to retain the benefit without paying for its value.

*Nossen v. Hoy*, 750 F. Supp. 740, 744-45 (E.D. Va. 1990). The facts before the Court are certainly sufficient to establish a quasi-contract through unjust

enrichment. Clearly, there was a benefit conferred on Gilbert for the nearly $52,000.00 he received from Singer. Obviously, Gilbert would have had knowledge of the receipt of the monies, and retained the monies he received from Singer, while only paying back to Singer a portion of the proceeds he received by routing his annuity payments to Singer. Accordingly, the Court does find that a quasi-contract exists between Gilbert and Singer through which Gilbert received a loan from Singer to be repaid over the course of 20 years.

This is not to say, however, that Singer is the appropriate beneficiary of the proceeds held by this Court, and future proceeds payable by Liberty Mutual, as the Court cannot, in good conscience, find that a quasi-contract between Singer and Gilbert requires the finding that Singer holds a properly perfected security interest in the proceeds of the annuity contract. What is clear from this transaction is that Singer set up such an elaborate transaction because it knew, at the very least, of the likelihood that the transaction would not pass legal scrutiny. Further, this elaborate scheme was set up because Singer was aware of the existence of the provision in the settlement agreement that the right to the receipt of periodic payments was non-transferrable, and thus, was done in an effort to perpetrate a fraud on Liberty. Accordingly, the Court holds that, while a quasi-contract exists between Gilbert and Singer, the Court will not create a security interest in the periodic payments,

15

and therefore, Singer's loan to Gilbert is unsecured.

### *Muschlitz' Claim*

This leaves Stephanie Muschlitz, the daughter of Gilbert, who is the named beneficiary on the annuity policy. While it is true that Gilbert designated Muschlitz as the beneficiary of the annuity policy subsequent to executing a durable power of attorney in which he put the sole authority in Singer to make such beneficiary designations, the Court finds that the execution of this power of attorney is merely part and parcel of the elaborate scheme put together by Singer to deceive Liberty into believing it was still making annuity payments to Gilbert, and thus, is invalidated as part of the invalid loan arrangement. Accordingly, it is Muschlitz to whom the remainder of the money deposited with this Court by Liberty Mutual and future payments on the annuity contract rightfully belong.

Consistent, therefore, with the Court's Opinion, Wolff's motion for summary judgment will be **DENIED**; Singer's motion for summary judgment will be **DENIED**; and Muschlitz' motion for summary judgment will be **GRANTED.** This Court declares that all annuity payments shall be paid to Stephanie Muschlitz (including those accrued and paid into the Registry of the Court.) It is further declared that Liberty Life Assurance Company of Boston and Sun Life Assurance Company of Canada (U.S.)(the Liberty parties) shall be released from any liability

to any party with respect to any Periodic Payments or Annuity Payments that have been made into the Registry of the Court and that the Liberty parties shall have no future liability to any party so long as Periodic Payments and/or Annuity Payments are made as provided in this Court's Order. All parties are enjoined from resuming past actions in the courts of Tennessee and Virginia regarding the Periodic Payments and/or the Annuity payments and from initiating any future actions with respect to the Periodic Payments and/or the Annuity payments other than the Court's allowing the parties to file an action in this Court to enforce the terms of any Order entered by the Court. To the extent the Liberty parties seek other relief from this Court, such relief is **DENIED**.

    **SO ORDERED**.

    The Clerk shall enter judgment consistent with this opinion.

    ENTER:

                                              s/J. RONNIE GREER
                                     UNITED STATES DISTRICT JUDGE